

**FILED**
**MARCH 23, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BURTON A. DEZIHAN, | ) | |
| | ) | No. 37262-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Burton Dezihan sued the State of Washington alleging four causes of action: whistleblower damages, negligence, invasion of privacy, and blacklisting. Mr. Dezihan claims that he has been unable to obtain government employment since the State wrongfully released his identity on a whistleblower complaint.

The trial court dismissed Mr. Dezihan's whistleblower complaint on summary judgment, finding that Mr. Dezihan does not qualify for whistleblower protection because he was not a state employee at the time he filed his complaint. Although the court denied the State's statute of limitations motion, the court nevertheless dismissed Mr. Dezihan's remaining three causes of action, concluding that they were based on his whistleblower status. Mr. Dezihan appealed. The State cross-appealed on the statute of limitations issue.

We affirm dismissal, although on alternative grounds. We agree that Mr. Dezihan does not qualify for protection under the "State Employees Whistleblower Act", chapter 42.40 RCW. In addition, we hold that the three-year statute of limitations bars his other claims.

FACTS

1. Factual history

Washington has adopted a public policy of protecting state employees who disclose improper governmental actions. RCW 42.40.010. In 2008, Burton Dezihan and Don Gillespie filed a whistleblower complaint with the state auditor's office (Auditor). The complaint alleged that an employee of the Washington State Department of Transportation—Ferries (Washington Ferries) was using state resources and time to conduct personal activities.

At the time they filed their complaint, Mr. Gillespie was an employee of the Washington Ferries. Mr. Dezihan, the plaintiff in this case, was not a state employee. He was, however, a volunteer for the "Fish and Wildlife Commission Americans with Disabilities Act Advisory Committee."

Mr. Gillespie apparently filled out the complaint form, and both he and Mr. Dezihan signed it. The complaint form indicates on its face that being an employee of the state of Washington is a requirement for whistleblower status. Mr. Dezihan claims that while he was at the Auditor's office to file the complaint, he spoke with an

investigator, Sandra Miller, and explained his status as a volunteer for the Fish and

Wildlife Advisory Committee. Ms. Miller allegedly assured Mr. Dezihan that his

volunteer work qualified him for whistleblower protection.

Over the next several months, Mr. Dezihan received several letters from the

Auditor's Office advising him of the progress of the complaint. Each letter assured Mr.

Dezihan that his identity was protected. Ultimately, the Auditor and the State Ferries

substantiated the whistleblower complaint.

Meanwhile, from 2008 to 2013, Mr. Dezihan applied for numerous and varied

state, local, and federal government jobs. He was not hired for any of these jobs. There

is no evidence in the record as to why Mr. Dezihan was not hired. The State suggests that

Mr. Dezihan would not allow potential employers to contact his prior employer.

Mr. Dezihan claims that he was not hired because he was retaliated against and

blacklisted for his whistleblower complaint. In support of this claim, Mr. Dezihan

testified that in 2012, an unidentified hiring manager from the Department of Social and

Health Services (DSHS) told Mr. Dezihan that he did not get the job he applied for

because he (Mr. Dezihan) was a whistleblower.[1]

---

[1] The superior court did not consider this hearsay statement as evidence that Mr. Dezihan was actually being blacklisted. It did consider the statement to establish notice to Mr. Dezihan for purposes of the statute of limitations issue.

Mr. Dezihan's whistleblower complaint apparently caused significant problems for Washington Ferries. In 2015, Mr. Dezihan and Mr. Gillispie attended the trial of a third Washington Ferries employee, who sued the state, claiming that he was being retaliated against as the perceived whistleblower. Mr. Dezihan claims that during a break in the trial, he and Mr. Gillespie overheard a conversation in which an assistant attorney general admitted receiving a completely unredacted copy of the whistleblower complaint. The assistant attorney general also allegedly commented that an unredacted copy of the complaint had been released on a statewide "interlink" system and was available to all state agencies.[2]

2. Procedural History

In January 2018, Mr. Dezihan filed this lawsuit against the State of Washington, raising four causes of action: 1) violation of the whistleblower statute, 2) violation of the anti-blacklisting statute, 3) invasion of privacy, and 4) negligence. The State filed a motion to dismiss under CR 12(b)(6) for failure to state a claim upon which relief can be

---

[2] Similar to the 2012 statement, the Superior Court would not consider this hearsay statement as proof of the matter asserted, but would consider it for purposes of notice to Mr. Dezihan on the statute of limitations issue. Later, during a deposition in Mr. Dezihan's case, this particular assistant attorney general denied ever making this comment or ever receiving an unredacted copy of Mr. Dezihan's whistleblower complaint. There is no evidence of a statewide interlink system, and no evidence that a fully unredacted version of the complaint was made available to state agencies.

granted. The trial court denied the motion because there were factual issues that needed to be developed as to whether Mr. Dezihan qualified as an employee for purposes of the Whistleblower Act.

Following discovery, the State filed for dismissal on summary judgment. The court granted the State's motion, dismissing Mr. Dezihan's whistleblower claim because he was not a state employee. The court dismissed Mr. Dezihan's other three claims, finding that they were based on his whistleblower status.

ANALYSIS

1. Standard of Review.

We apply a de novo standard when reviewing the trial court's decision on summary judgment. *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 554-55, 252 P.3d 555 (2011). Summary judgment is appropriate only when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Malnar v. Carlson*, 128 Wn.2d 521, 534-35, 910 P.2d 455 (1996). The facts are examined in the light most favorable to the nonmoving party. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). If a reasonable person could come to only one conclusion, the court grants the motion. *Id.*

As the moving party, the State has the initial burden to show that there are no genuine issues of material fact. CR 56(c). Once that initial burden is satisfied, the burden shifts to Mr. Dezihan, the nonmoving party, to thwart summary judgment by

5

presenting evidence that demonstrates a dispute of material fact. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Mr. Dezihan's burden requires him to produce more than mere allegations or denials; it requires specific admissible facts showing a genuine dispute. CR 56(e).

Like the trial court below, we only consider admissible evidence in deciding whether summary judgment is proper. *Lynn v. Labor Ready, Inc.*, 136 Wn. App. 295, 306, 151 P.3d 201 (2006). A party cannot rely on hearsay to defeat a motion for summary judgment. *Id*.

2. Does Mr. Dezihan qualify for protection under the State Whistleblower Act?

In 2008, when he filed his whistleblower complaint with the State Auditor's Office, Mr. Dezihan admits that he was not an employee as that term is commonly used. He asserts nonetheless that his work on the Fish and Wildlife Commission Americans with Disabilities Act Advisory Committee qualifies him as a state employee for purposes of the State Whistleblower Act because he was receiving $100 per day that he worked for the committee. Alternatively, he argues that we should interpret the term "employee" liberally to include those who volunteer for state committees. Finally, he argues that the State should be estopped from claiming that Mr. Dezihan does not qualify as a whistleblower because it repeatedly assured him that he qualified.

We apply rules of statutory construction to determine if Mr. Dezihan qualifies as an employee under the State Whistleblower Act. "[A]s with all issues of statutory interpretation, our primary goal is to carry out legislative intent, and give meaningful effect to the language our legislature enacted." *Doty v. Town of S. Prairie*, 155 Wn. 2d 527, 533, 120 P.3d 941 (2005). "When the statutory language is unambiguous, we derive this intent from the language used in the statute and related statutes, giving effect to every provision." *Id.*

The State Employee Whistleblower Protection Act, chapter 42.40 RCW sets forth the policies and protections afforded state employees. As noted above, Washington State's policy is to protect state employees who disclose improper governmental action. RCW 42.40.010. To qualify as a "whistleblower," a person must be an employee of the state. RCW 42.40.020(10). The Act defines an "employee" as "any individual employed or holding office in any department or agency of state government." RCW 42.40.020(2). This language is clear and unambiguous.

Mr. Dezihan's work on the Advisory Committee does not qualify him as a state employee. By statute, Advisory Committee members serve without compensation, though they may be reimbursed for expenses. RCW 77.04.150(5). Because he was not compensated for his time, Mr. Dezihan was a volunteer for the Advisory Committee. As the Supreme Court has noted, it is a "common sense notion that volunteers and

employees are mutually exclusive categories with juxtaposed definitions." *Doty*, 155

Wn.2d 540-41.

Despite the clear language set forth in the statute, Mr. Dezihan argues that we

should apply the definitions of employee and employer used in the Washington

Administrative Code for purposes of the Washington Law Against Discrimination

(WLAD), chapter 49.60 RCW. This Act applies to employers who employ eight or more

employees. RCW 49.60.040(11). In determining which employers are subject to the

WLAD, the code specifically includes unpaid persons who are generally treated in the

same manner that an employee would be treated, i.e., selection, discipline, work

assignments. WAC 162-16-220. Mr. Dezihan's reliance on this definition is misplaced.

Since the Whistleblower Act already contains an unambiguous definition of

employee, there is no need to go beyond the Act for further clarification. *See State v.*

*Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005) ("If the language is

unambiguous, a reviewing court is to rely solely on the statutory language."). Even if we

were to consider the WACs' definition, this code does not define an employee; it defines

an employer.

Contrary to Mr. Dezihan's argument, the legislature's use of different definitions

in different statutes suggests that they intended a different meaning. *Woodbury v. City of*

*Seattle*, 172 Wn. App. 747, 753, 292 P.3d 134 (2013). In *Woodbury*, the plaintiff was a

deputy chief for a city fire department and filed a whistleblower complaint in superior

8

court under the Act protecting local government employees, chapter 42.41 RCW. As provided by statute, the city had promulgated procedures for processing a whistleblower complaint through administrative hearings. In holding that the Local Government Whistleblower Protection Act did not provide a cause of action in superior court, the court compared the Local Act to the State Act, which does provide for a cause of action in superior court. The Woodbury court recognized, "[i]t is well settled that where the legislature uses certain language in one instance but different, dissimilar language in another, a difference in legislative intent is presumed." *Id*. at 753.

We also reject Mr. Dezihan's invitation to expand the definition of "employee" beyond its plain and ordinary meaning. Mr. Dezihan argues that the law should be broadly interpreted to include volunteers because they are less financially reliant on the people they report. This argument, however, works against him. An employee's financial dependence on his employer is precisely why the Whistleblower Act protects employees. Presumably, those who are not financially dependent on the state as an employer will feel free to report without reprisal.

Finally, Mr. Dezihan argues that the State should be estopped from arguing that Mr. Dezihan is not an employee because the State repeatedly assured Mr. Dezihan that he was protected as a whistleblower and induced Mr. Dezihan to rely on this assurance. Whether or not this is true, courts do not apply equitable estoppel "where the representations allegedly relied upon are matters of law, rather than fact." *Dept. of*

*Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). Whether Mr.

Dezihan qualifies as an employee for the purpose of protection under the Whistleblower

Act is a question of law. *See Newton v. State*, 192 Wn. App. 931, 936, 369 P.3d 511

(2016) (statutory interpretation is a question of law reviewed de novo); *Doty*, 155 Wn.2d

at 533 (holding as a matter of law that plaintiff was a volunteer, not an employee for

purposes of the Industrial Insurance Act). Consequently, estoppel does not apply to this

issue.

Viewing the evidence in a light most favorable to Mr. Dezihan, we conclude that

Mr. Dezihan was not a state employee at the time he filed a whistleblower complaint, and

therefore does not qualify for protection under the State Employee Whistleblower

Protection Act, chapter 42.40 RCW.

3. Statute of Limitations

The State cross-appeals the trial court's denial of its motion to dismiss Mr.

Dezihan's claims as barred by the statute of limitations. The statute of limitations is an

affirmative defense, and the defendant carries the burden of proving that it applies. *Rivas*

*v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 267, 189 P.3d 753 (2008). The discovery

rule is an exception to the general rule. *Brown v. Dep't of Corr.*, 198 Wn. App. 1, 12,

392 P.3d 1081 (2016). The discovery rule applies to "claims in which plaintiffs could not

have immediately known of their injuries." *In re the Estates of Hibbard*, 118 Wn.2d 737,

749, 826 P.2d 690 (1992). When a plaintiff claims the statute of limitations was tolled by the discovery rule, the burden shifts to the plaintiff to prove "that the facts constituting the claim were not and could not have been discovered by due diligence within the applicable limitations period." *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 603, 123 P.3d 465 (2005). Whether a party exercised due diligence is generally a question of fact unless reasonable minds could reach only one conclusion, in which case, the issue can be decided as a matter of law. *Id.*

In this case, the parties agree that all of Mr. Dezihan's causes of action are subject to the three-year statute of limitations. At the earliest, the statute of limitations would have started to run in 2008, when Mr. Dezihan filed his whistleblower complaint. However, Mr. Dezihan claims that he did not discover the facts supporting his causes of action until 2015 when he allegedly overheard an assistant attorney general admit to receiving an unredacted copy of the complaint. The State points to Mr. Dezihan's own deposition testimony where he testified that in 2012 a State employee told him that he was not being hired because of his status as a whistleblower.

Mr. Dezihan's remaining three causes of action are negligence, invasion of privacy, and blacklisting. To determine if a DSHS hiring manager's statement provided Mr. Dezihan with enough facts to put him on notice under the discovery rule, we must consider the necessary elements of each remaining cause of action.

11

The essential elements of a cause of action for negligence are (1) the existence of a duty owed to the plaintiff, (2) breach of that duty, (3) resulting injury, and (4) a proximate cause between the alleged breach and resulting injury. *Brown*, 198 Wn. App. at 12. Mr. Dezihan claims that even if he is not a whistleblower under the statute, the State owed him a duty under the special relationship doctrine. This doctrine applies when the defendant has induced justifiable reliance by the plaintiff that the defendant will use reasonable care to prevent injury to the plaintiff. 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE §1.11, at 18 (3d ed. 2006).

Mr. Dezihan's common law claim for invasion of privacy requires proof that a person or entity publicized information about another's private life that would be highly offensive to a reasonable person and had no legitimate concern to the public. *White v. Twp. of Winthrop*, 128 Wn. App. 588, 593-94, 116 P.3d 1034 (2005).

Mr. Dezihan's blacklisting cause of action requires proof that the defendant "wilfully and maliciously ma[de] or issue[d] any statement or paper that will tend to influence or prejudice the mind of any employer against the person of such person seeking employment." *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App. 502, 515, 278 P.3d 197 (2012) (citing RCW 49.44.010).

In applying the discovery rule to these three causes of action, we must determine when Mr. Dezihan became aware of facts sufficient to put him on notice that (1) the State had released the whistleblower complaint and his identity as the complainant, and (2) that Mr. Dezihan suffered damages as a result of this release.

In his deposition for this case, Mr. Dezihan testified: "During the 2012 timeframe, an unidentified hiring manager from the DSHS told me that I did not get the DSHS job that I applied and interviewed for because I was a whistleblower." Clerk's Papers at654. This information provided sufficient facts to put Mr. Dezihan on notice of his claims. If true, the statement acknowledges that the State had released Mr. Dezihan's identity as a whistleblower and that he was being denied jobs because of it.

"When a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm." *EPIC v. CliftonLarsonAllen LLP*, 199 Wn. App. 257, 276, 402 P.3d 320 (2017). The statute of limitations will not continue to toll under these circumstances, even if more serious harm may continue to flow from the wrongful conduct. *Id.* "A claimant who knows of the harm and the immediate cause of the harm, but fails to make any meaningful inquiry, has breached the due diligence duty." *Saberhagen Holdings, Inc.*, 129 Wn. App. at 604.

Mr. Dezihan suggests that the 2012 statement did not trigger the statute of limitations because he did not consult an attorney at the time. Even if he had, the

13

attorney might not take the case given that the statement's source is unknown. The discovery rule is based on facts, not on the law. It tolls the statute of limitations until the plaintiff becomes aware of sufficient facts, even if the plaintiff does not know if the facts are legally sufficient. *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992).

Had Mr. Dezihan met with an attorney within three years of the 2012 statement, the attorney could have conducted further investigation, just as Mr. Dezihan's attorneys did in this case. But the 2012 statement placed Mr. Dezihan on notice that he was not being hired because the State had released his name as a whistleblower and due diligence required him to make further inquiry to ascertain the scope of that harm. *Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 450, 6 P.3d 104 (2000). "[T]he law does not require a smoking gun in order for the statute of limitations to commence. A prospective plaintiff who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken." *Id*. at 450-51 (internal citation omitted).

We hold that reasonable minds could not differ. Considering the facts in a light most favorable to the plaintiff, based on his statement, Mr. Dezihan knew or should have known in 2012 that the State had identified him as a whistleblower and that as a result, Mr. Dezihan was not being hired for any government jobs. We also recognize, however, that our holding does not preclude subsequent causes of action. In this case, Mr. Dezihan's last job application was in 2013. He filed this action in January 2018, more than three years after his last application.

No. 37262-6-III
*Dezihan v. State*

Because we resolve this case on these two issues, we decline to address the remaining issues raised by the State and Mr. Dezihan.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, A.C.J.

15